## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GERALD ADAMS and JULIA JONES, | Civil Action No. |
| Plaintiffs, | 21-17442 (MCA) (LDW) |
| v. |  |
| DMG PARK, LLC, DMG INVESTMENTS, LLC, DMG PROPERTY MANAGEMENT, LLC, ONE PARK CONDOMINIUM ASSOCIATION, INC., MAVERICK CONCIERGE, AND JOHN DOES 1-100, | **OPINION AND ORDER DENYING PLAINTIFF ADAMS' MOTION TO AMEND** |
| Defendants. |  |

Before the Court is plaintiff Gerald Adams' Motion for Leave to File a Third Amended Complaint. (ECF 185, 196). Defendant DMG Property Management, LLC ("DMG Property Management") opposes the motion. (ECF 194).[1] Adams' co-plaintiff and former romantic partner, Julia Jones, currently a *pro se* litigant, also opposes the motion. (ECF 189).

Plaintiff Adams'[2] motion to amend is not only untimely under the "good cause" standard of Federal Rule of Civil Procedure 16, but also fails to satisfy the amendment criteria of Federal Rule of Civil Procedure 15. Plaintiff's own proposed pleading demonstrates he had actual knowledge of the majority of facts underlying his proposed amendments long before he filed this motion, and his claim not to have appreciated the significance of certain known facts until more recently does not remedy his failure to seek amendment sooner. His further attempt to make

---

[1]     Defendants DMG Park, LLC, DMG Investments, LLC and One Park Condominium Association, Inc. did not file opposition to the motion.

[2]     The movant will be referred to either as Adams or "plaintiff."

extensive changes to his pleading (shown in his redlined, proposed amended complaint but not discussed in his briefs), including the removal of his co-plaintiff Jones' allegations and claims without her consent, is procedurally improper and in bad faith. For essentially these reasons, and as further explained below, Adams' motion to amend is **DENIED**.

<h2 style="text-align:center">I.    BACKGROUND</h2>

Plaintiffs Gerald Adams and Julia Jones commenced this housing discrimination action in September 2021. (*See* Complaint, ECF 1). They allege that their condominium association, several entities affiliated with the association, and a concierge service employed by those entities violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.* (*See* Second Amended Complaint, ECF 63 ¶¶ 134–43). Plaintiffs also assert common law claims for retaliation, breach of contract, and negligence. (*See id.* ¶¶ 144–57).

**A. Relevant Procedural History**

Because the timing of plaintiff's motion is significant to its outcome, some relevant procedural history of this four-year-old action is necessary. The fact discovery period has been open now for nearly four years, since Magistrate Judge Cathy Waldor entered an initial scheduling order requiring the completion of fact discovery by July 2022 and any motions to amend pleadings within ninety days after a decision on then-pending motions to dismiss. (ECF 24). The Court subsequently extended those deadlines, allowing fact discovery to be completed by May 4, 2023 and motions to amend pleadings to be filed within ninety days after a decision on motions to dismiss. (ECF 49).

Because the motions to dismiss were decided on January 10, 2023 (ECF 50), the scheduling order would have required motions to amend pleadings to be filed no later than mid-April 2023.

However, the Court extended that date to September 7, 2023 because the parties had been attempting to mediate the case. (*See* ECF 52, 62). Plaintiffs filed their Second Amended Complaint on that deadline. (ECF 63). That was the last Court-permitted date to seek to amend pleadings.

Just before the filing of the Second Amended Complaint, this Court conducted a case management conference to ascertain the time needed to complete fact discovery. (ECF 61, 62). Having learned from counsel at the August 22, 2023 conference that they had not even served or responded to written discovery, much less taken any depositions, in the prior two years the action had been pending (ECF 64), the Court set new deadlines of February 1, 2024 to complete fact discovery and May 3, 2024 to complete expert discovery. (*See* Amended Scheduling Order dated September 27, 2023, ECF 66). No party requested a new date to seek amendments to pleadings (ECF 64), and the Court did not view it as necessary to include one, given that the Complaint had already been amended twice.

Since entry of the Amended Scheduling Order in September 2023, the parties have struggled to complete fact discovery, despite this Court's best case management efforts. The difficulty is largely attributable to plaintiffs' dysfunction—the withdrawals of at least five of their previous attorneys (*see* ECF 76, 91, 100, 112, 156); their failure to provide discovery in accordance with the Court's orders (*see, e.g.,* ECF 74, 114, 147, 236); the extreme number of discovery disputes attributable largely to Adams (*see, e.g.,* ECF 109, 121, 133, 135, 142, 143, 145, 146, 150, 151, 170, 203–206, 209, 211–214, 222, 223, 225–227, 229); and, most recently, Adams' unilateral attempt to impose conditions on his deposition, followed by his last-minute cancellation of that deposition. (ECF 224, 228).

Nevertheless, the parties are finally on the brink of concluding fact discovery at long last. It is the Court's understanding that the only remaining deposition is that of Adams. The Court will soon decide a motion to compel his appearance. The parties then will be required expeditiously to complete expert discovery.

**B. Plaintiff's Motion To Amend**

Plaintiff filed the instant motion to amend in May 2025. (*See* ECF 185). The Court had terminated two earlier motions to amend because Adams failed to follow the undersigned's pre-motion leave requirements. (*See* ECF 132, 134, 139, 140). The Court subsequently granted leave to file the motion no later than May 16, 2025. (ECF 180). On that deadline, plaintiff Adams filed the instant motion, along with a Proposed Third Amended Complaint ("PTAC"). (ECF 185, 185-5).

Plaintiff's motion argues that he should be permitted, through the PTAC, to join four new defendants to this action: (1) the law firm Chiesa Shahinian & Giantomasi PC ("CSG"), which allegedly served as counsel to defendant One Park Condominium Association ("One Park") at the time the alleged discrimination took place (*see* ECF 185-5 ¶ 7);[3] (2) Zachary Wang, an alleged property manager for One Park (*see id.* ¶ 8); (3) Huijie Lyu, another alleged property manager for One Park (*see id.* ¶ 9); and (4) Wei Zhu, the alleged President of One Park. (*See id.* ¶ 10). What plaintiff does not include in his supporting motion papers, but which is evident from a review of the PTAC, is that the new pleading also would assert myriad new factual allegations and, notably, remove many of the joint allegations made with his co-plaintiff Jones into individual allegations made solely by him.

---

[3]     CSG also previously served as counsel to defendants DMG Park, LLC and DMG Investments, LLC in this action, but has since withdrawn its representation. (*See* ECF 157, 158).

Plaintiff attempts to justify this late amendment by arguing that information he received in a related state court action in July 2024 caused him to realize that the four proposed new defendants "were complicit in [the] violation of his rights" under the FHA, the NJLAD, and the common law against retaliation. (*See* ECF 185-1 at 6; *see also* ECF 185-5 at 21–22). In the PTAC, Adams asserts that CSG attorneys harassed him through a series of threatening calls and emails, and that those same attorneys instructed several of defendants' employees to discriminate against him. (*See* ECF 185-5 ¶¶ 82, 89, 97, 104–107, 109–110, 112–113, 115, 138). He also claims that CSG contributed to his exclusion from voting in condominium association elections on the basis of his race. (*See id.* ¶¶ 159–161). As for Mr. Wang and Ms. Lyu, Adams claims that they would not listen to or address his complaints about alleged discrimination, and that they refused to offer services or unit repairs to himself and other African Americans. (*See id.* ¶¶ 124–127). And finally, Adams claims that Mr. Zhu engaged in the above-mentioned effort to deny him his right to vote in condominium association elections on account of his race. (*See id.* ¶¶ 162–163).

In addition to including new claims against the proposed defendants, Adams' proposed pleading essentially would remove the factual basis for many of the claims of his co-plaintiff Julia Jones, over her vehement objection. That decision seems to be motivated by an apparent falling out between the two. It comes after plaintiff Jones made several serious allegations against plaintiff Adams during her September 2024 deposition—allegations that Adams denies. (*See* ECF 168 at 2). Indeed, Jones' letter in opposition to this motion sheds light on just how acrimonious the plaintiffs' relationship has grown. (*See* ECF 189). There, plaintiff Jones stands by the allegations made during her deposition and makes further claims about Adams. (*See id.*). [4]

---

[4]    The Court takes no position as to the truth of the allegations Jones made against Adams during her deposition (*see* ECF 168), or in her opposition to this motion. (*See* ECF 189).

Although the PTAC does not actually remove Jones' name from the caption as a plaintiff, it does remove nearly every substantive reference the Complaint previously made to her. (*See* ECF 185-5 at 1, ¶¶ 15, 21, 24–25, 32, 103–105, 113, 145, 147, 153). In a few instances, Adams refers to Jones as a factual matter but rephrases the pleading to imply that she is no longer a plaintiff with viable legal claims. (*See id.* ¶¶ 97, 116, 157). Practically, the effect of these proposed amendments would be to extinguish any chance Jones may have to obtain relief as a plaintiff in this case. Yet Adams does not even mention these proposed amendments in his legal briefs. (*See* ECF 185-1, 196-1).

Finally, plaintiff's PTAC amends or adds to many of his preexisting factual allegations, unrelated to either the four proposed new defendants or Jones. He adds new detail—such as names —to certain allegations of discrimination, and describes new instances of alleged discrimination by defendants' employees. (*See, e.g.,* ECF 185-5 ¶¶ 17, 19, 28–30, 47, 68–69, 71, 75, 83–84, 90–95, 102, 114).[5] Here, too, Adams fails to mention these extensive proposed amendments in his briefing. (*See* ECF 185-1, 196-1).

## II.    DISCUSSION

A threshold issue in the Court's consideration of a motion to amend is whether the motion is governed solely by the standards of Federal Rule of Civil Procedure 15, or whether Federal Rule of Civil Procedure 16 must also be satisfied. *See Allegheny Plant Servs., Inc. v. Carolina Cas. Ins. Co.*, 14-CV-4265 (JBC), 2017 WL 772905, at *2 (D.N.J. Feb. 27, 2017). If Rule 16 applies, the

---

[5]    Here, the Court relies on the redlined additions shown in the PTAC in concluding these allegations are new. However, in comparing the Second Amended Complaint to the PTAC, the Court observed that the PTAC does not accurately show in redline the differences between the two pleadings. Regardless, the Court should not have to undertake a line by line comparison of the two pleadings; plaintiff was required under Local Civil Rule 15.1 to provide an accurate redlined PTAC.

Court must determine whether the motion satisfies that Rule's "good cause" standard before considering whether leave is also appropriate under Rule 15's four-part test. *See Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

### A. Federal Rule of Civil Procedure 16

Because Adams failed to move to amend within the deadline set by the Court's Scheduling Orders, he must show "good cause" under Rule 16 for having failed to meet that deadline. He does not.

### 1. Legal Standard

Federal Rule of Civil Procedure 16 requires the Court to enter a scheduling order that, among other things, "limit[s] the time to join other parties [or] amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). That scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Thus, when a litigant "moves to amend or add a party after the deadline in a district court's scheduling order has passed," Rule 16's "good cause" standard applies. *Premier Comp Sols., LLC*, 970 F.3d at 319; *Sabatino v. Union Twp.*, 11-CV-1656 (MAH), 2013 WL 1622306, at *3 (D.N.J. Apr. 15, 2013).

The good cause inquiry "focuses on the moving party's burden to show due diligence." *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Whether a party has demonstrated due diligence primarily turns on whether they "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *McDowell v. City of Elizabeth*, 23-CV-21415 (LDW), 2025 WL 1379259, at *2 (D.N.J. May 13, 2025) (quoting *Sabatino*, 2013 WL 1622306, at *4) (internal quotation marks omitted). Indeed, "[t]he most common basis for finding a lack of good cause" under Rule 16 "is the party's knowledge of the potential claim before the deadline to amend

has passed." *Kennedy v. City of Newark*, 10-CV-1405 (JAD), 2011 WL 2669601, at \*2 (D.N.J. July 7, 2011); *see also Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005). Ultimately, however, "[t]he Court has discretion in determining what kind of showing the moving party must make in order to satisfy" Rule 16's "good cause requirement." *Rx ReLeaf LLC v. Relief TMS LLC*, 23-CV-3551 (JBD), 2024 WL 4894768, at \*3 (D.N.J. Nov. 26, 2024).

### 2. Application

Although the Rule 16 standard is not addressed in the parties' briefing, that does not preclude the Court from considering it. *See* ECF 185-1, 189, 194, 196; *Grasso v. Consol. Rail Corp.*, 12-CV-398 (MAH), 2013 WL 3167761, at \*4 (D.N.J. June 20, 2013); *Sabatino*, 2013 WL 1622306, at \*3. The Court finds it appropriate to consider that standard here given that the proposed amendment was sought well more than a year after the last Court-sanctioned amendment to the Complaint in this four-year-old action.

As explained in the procedural history of this case set forth above, the Court permitted the last operative version of the Complaint, the Second Amended Complaint, to be filed on September 7, 2023. (*See* ECF 52, 62, 63). Therefore, Adams must show good cause for the amendments he seeks to make now, some two years after the filing of that pleading.[6]

---

[6]     Plaintiff Adams' failure to address Rule 16's "good cause" requirement may derive from his apparent belief that the instant motion was filed "within the timeframe allowed by the Court." (*See* ECF 185-1 at 7). If so, Adams confuses the Court's granting of leave to file the requested motion to amend (something the Court *must* allow in order to provide a movant with an opportunity to meets its burden of obtaining the relief sought by the motion) with the presumption of timeliness attached to seeking to amend within the Scheduling Order's case management deadlines set under Rule 16. The granting of leave to file a motion to amend does not, however, constitute a determination that the motion is timely for Rule 16 purposes. *See, e.g.*, *Sohn v. Kominox USA, Inc.*, 21-CV-17526 (ESK), 2023 WL 2770422, at \*5 (D.N.J. Apr. 3, 2023); *Shedler v. Sokoloff*, 16-CV-728 (MAH), 2018 WL 4357483, at \*1 n.1 (D.N.J. Sept. 13, 2018); *Wang v. N.J. State Police*, 18-CV-11933 (ZNQ), 2021 WL 794535, at \*3 (D.N.J. Mar. 1, 2021); *Velto v. Reliance Standard Life Ins. Co.*, 10-CV-1829 (JAD), 2011 WL 810550, at \*4 (D.N.J. Mar. 1, 2011).

As to Adams' attempts to implead four new defendants at this late stage of the case, he argues that the need to name these defendants was not discovered until July 2024, when he received certain information in a state court proceeding related to this case. (*See* ECF 185-1 at 6). He does not set forth in his motion papers, however, a single specific fact he discovered in July 2024 that he did not know previously or could not have learned earlier with due diligence. And even a cursory review of his own proposed pleading demonstrates that plaintiff had personal knowledge, before filing the Second Amended Complaint, of nearly every amended allegation he seeks to include now in the PTAC, in some instances, before he even filed this lawsuit.

The majority of the PTAC's claims against the four proposed defendants involve instances of alleged discrimination that plaintiff Adams says were openly and directly inflicted on him before he filed the Second Amended Complaint on September 7, 2023. Indeed, many of the events are alleged in the PTAC to have occurred before plaintiffs even brought suit in September 2021. For example, a number of the alleged harassing communications and other discriminatory acts by CSG attorneys supposedly took place between March 2020 and August 2021, before plaintiffs filed their initial Complaint. (*See* ECF 185-5 ¶¶ 82, 85, 89, 97, 104; *see also* ECF 1). In other places, the PTAC recounts instances of alleged discrimination or retaliation that Adams allegedly suffered after he brought suit, but before the September 7, 2023 amendment deadline. (*See id.* ¶¶ 105–106, 109–110). Plaintiff Adams cannot credibly maintain that he was unaware of these alleged personal experiences until July 2024, or that he lacked "the knowledge necessary" to raise them "before the deadline expired." *See McDowell*, 2025 WL 1379259, at *2. His own proposed pleading alleges that he was aware of the offending acts contemporaneously with their occurrence in the years before 2024.

The same is true with respect to his request to implead prospective defendants Wang and

Lyu.  (*See* ECF 185-5 ¶¶ 124–127).  Adams claims that those individuals refused to engage in an

alternative dispute resolution process "to resolve the unequitable [sic] treatment" he allegedly

faced due to his race.  (*Id.* ¶ 124).  According to Adams, that refusal began in August 2023, the

month before plaintiffs filed their Second Amended Complaint.  (*See id.*; ECF 63).  But that

pleading makes no mention of Ms. Lyu or Mr. Wang.  (*See* ECF 63).  Adams' delays in raising

allegations he was aware of when he filed the Second Amended Complaint belie any claim that he

was diligent under Rule 16.  *See Race Tires Am., Inc.*, 614 F.3d at 85.[7]

As for the allegations against prospective defendant Zhu, they are alleged to have occurred

in 2023, including in November and December 2023.  (*See* ECF 185-5 ¶¶ 162–163).   Although

certain of these events allegedly occurred after the filing of the Second Amended Complaint in

September 2023, plaintiff does not explain why moving to amend to include them more than a year

later satisfies Rule 16's due diligence requirement.  His motion was not made remotely close in

time to the Court-ordered deadlines to seek to amend pleadings.  And in any event, as explained

*infra,* amending to include these allegations at this late date would constitute prejudicial and undue

delay under Federal Rule of Civil Procedure 15.

Plaintiff does not deny that he has known about the PTAC's allegations against the

proposed defendants for quite some time.  Rather, he claims that the information discovered in

---

[7]    According to Adams, "it is newly discovered that Zachary Wang and Huijie Lyu were not
employees" of defendants, but rather, were "operating under their own entities while engaging" in
the alleged discriminatory conduct.  (*See* ECF 185-1 at 6).  That is presumably why he now seeks
to add those individuals as defendants.  But Rule 16's "good cause" standard focuses not only on
the knowledge the movant actually had prior to seeking amendment, but also on the knowledge
they "should have possessed" through "the exercise of reasonable diligence."  *McDowell*, 2025
WL 1379259, at *2.  Even if Adams first learned the identity of these two individuals' employer
in July 2024, he does not explain why such information would have been unavailable to him in
discovery far earlier had he exercised the required due diligence.

July 2024 reveals the "coordinated nature of the discrimination scheme." (*See* ECF 196-1 at 6). As plaintiff describes it, "[k]nowing that an incident occurred is fundamentally different from understanding its place within a broader discriminatory scheme." (*Id.* at 7). But the PTAC does not allege any sort of wide-ranging discriminatory "scheme" or "conspiracy." (*See id.* at 4, 6–7, 8). It merely seeks to assert *individual* claims against the proposed defendants under the FHA and the NJLAD, and for common law retaliation. (*See* ECF 185-5 ¶¶ 168–182). As explained, plaintiff knew of the facts underlying those individual claims long before July 2024. And the broad discovery available to parties under the Federal Rules would have allowed him to explore any purported overarching scheme since discovery commenced in January 2022, had he exercised the requisite diligence.

Because plaintiff Adams had knowledge of the majority of the PTAC's allegations against the four proposed defendants months—if not years—before he ever sought to raise them, the Court finds that he has not met his "burden to show due diligence." *Race Tires Am., Inc.*, 614 F.3d at 84. And because he has not met that burden, plaintiff Adams cannot satisfy Rule 16's "good cause" standard. *See id.*; *Sabatino*, 2013 WL 1622306, at *4.

Further, plaintiff has not even mentioned, much less attempted to justify, his other amendments of the factual allegations (unrelated to the four proposed new defendants) that concern events that allegedly occurred long before his filing of the Second Amended Complaint in September 2023. (*See, e.g.*, ECF 185-5 ¶¶ 17, 19, 28–30, 47, 68–69, 71, 83–84, 90–95, 102, 114). Clearly, Rule 16's requirements have not been satisfied as to these newly included factual allegations, and the Court is disturbed by plaintiff's seemingly surreptitious attempt to include

11

them in the lengthy proposed pleading without calling attention to them in his moving or reply briefs.[8]

For all of the foregoing reasons, much of the PTAC is barred by plaintiff's failure to establish good cause under Rule 16 for not including these amendments in his September 2023 Second Amended Complaint. The remainder of the PTAC is improper under Rule 15, as explained below.

### B. Federal Rule of Civil Procedure 15

Plaintiff also fails to satisfy the standards for amendments set forth by Federal Rule of Civil Procedure 15.

#### 1. Legal Standard

Rule 15 provides that courts "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite that liberal standard, the decision whether or not "to grant leave to amend" under Rule 15 ultimately "rests in the court's sound discretion." *Myles v. Securitas Sec. Servs., USA, Inc.*, 23-CV-22507 (JSA), 2025 WL 1431164, at *3 (D.N.J. May 19, 2025) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). A court may exercise its discretion to deny a motion to amend if the motion: (1) is unduly delayed; (2) is made in bad faith or with dilatory motive; (3) would cause undue prejudice to the non-moving parties; or (4) proposes a futile amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

[8]    As noted elsewhere in this Opinion, the Court is equally disturbed by the removal of allegations concerning plaintiff Julia Jones, which are nowhere mentioned in his legal briefing on this motion. And further concerning to the Court is plaintiff's not having submitted a redlined version of the PTAC that accurately shows the proposed revisions from the previous version of the Complaint; as set forth above, a comparison of the Second Amended Complaint to the PTAC demonstrates revisions to the former that are not indicated in redline in the latter, as required by Local Civil Rule 15.1(a).

### 2. Application

In opposing plaintiff Adams' motion to amend, DMG Property Management argues that the motion is unduly delayed, is made in bad faith, and that amendment would cause it undue prejudice.  (*See* ECF 194 at 3–8).[9]  For the reasons explained below, the Court agrees that all three of those Rule 15 factors weigh against permitting amendment in this case.[10]

### a. Undue Delay

The first Rule 15 factor—whether the motion is unduly delayed—weighs against allowing plaintiff Adams to amend in this case.  It is true that "the mere passage of time" or "delay alone [are] insufficient ground[s] to deny leave to amend."  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (internal citation omitted).  "Delay may become undue," however, and therefore justify denial of the motion, "when a movant has had previous opportunities to amend a complaint."  *See id.*  That is especially so if the movant had knowledge of the facts underlying the proposed amendment when they filed previous versions of the complaint.  *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (affirming denial of a motion to amend where "[m]ost of the facts were available to plaintiff [] before she filed her original complaint . . . and probably all of them were available when she amended her complaint."). That said, a court's undue delay analysis must consider "the movant's reasons for not amending sooner," and "balance [those] reasons against the burden of delay."  *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (internal quotation marks and citations omitted).

---

[9]    While plaintiff Jones' *pro se* letter in opposition raises certain points that factor into the Court's analysis, it does not neatly track the Rule 15 factors, and raises other allegations that, while concerning, fall far beyond the scope of the instant motion.  (*See* ECF 189).

[10]    DMG Property Management does not advance any argument as to amendment futility, and the Court therefore does not address that factor.  *See Grasso*, 2013 WL 3167761, at *8.

The Court has already discussed in detail, with respect to Rule 16, Adams' significant, unjustified delay in asserting claims against the proposed defendants. Adams' failure to seek to make these amendments sooner is equally germane to the undue delay analysis in that many of the facts underlying the proposed amendments "were available to [Adams] before [plaintiffs] filed the original complaint," and almost "all of them were available when" plaintiffs filed the Second Amended Complaint. *See Lorenz*, 1 F.3d at 1414. As discussed above, nearly every one of the PTAC's allegations against the proposed defendants involve instances of discrimination or retaliation that Adams claims to have personally experienced before September 7, 2023, the date on which the Second Amended Complaint was filed. (*See* ECF 185-5 ¶¶ 82, 85, 89, 97, 104, 105–106, 109–110, 124–127). In fact, a number of those incidents are alleged to have occurred before plaintiffs even filed their initial Complaint in September 2021. (*See id.* ¶¶ 82, 85, 89, 97, 104). Plaintiff Adams' decision not to include those claims in the three previous versions of the Complaint is unjustified, weighing against permitting amendment now. *See Cureton*, 252 F.3d at 273; *Lorenz*, 1 F.3d at 1414.

Even if plaintiff truly did not appreciate the significance of certain facts until receiving unspecified information in another action in July 2024, that still would not explain his long subsequent delay in moving to amend. This is particularly inexcusable in a case that has been pending for years, in which plaintiff has had the right to take discovery since January 2022 (ECF 24), and in which plaintiff twice has been permitted to amend his Complaint previously.

So, too, is his delay undue in seeking to implead defendant Zhu. His allegations in the PTAC against Zhu all concern events in 2023. (*See* ECF 185-5 ¶¶ 162–163). Plaintiff provides no adequate reason for his failure to seek to implead Zhu shortly after those events occurred. Certainly, there is no excuse for waiting well more than a year to do so.

14

When balanced against the significant burden on the Court and parties posed by an amendment so many years into this litigation, Adams' purported reasons for not amending sooner simply do not suffice. *See Bjorgung*, 550 F.3d at 266. The Court thus concludes that the first Rule 15 factor weighs against permitting the proposed amendments.

### b. Bad Faith

Rule 15's second factor—whether the motion is made in bad faith or with dilatory motive—also weighs against permitting amendment. In conducting a bad faith analysis under Rule 15, a court must consider only whether "the motion, itself, is made in bad faith." *See Livingstone v. Haddon Point Manager LLC*, 19-CV-13412 (RBK), 2020 WL 7137852, at *3 (D.N.J. Dec. 7, 2020); *see also Pepitone v. Target Corp.*, 24-CV-236 (MAS), 2024 WL 3823002, at *2 (D.N.J. Aug. 14, 2024). This Court has long made clear that "[s]imply failing to add a claim a party had prior knowledge of does not alone amount to bad faith." *See Zelma v. Choice Energy, LLC*, 19-CV-17535 (MF), 2020 WL 5201341, at *2 (D.N.J. Sept. 1, 2020) (citing *Leased Optical Depts.-Montgomery Ward, Inc. v. Opti-center, Inc.*, 120 F.R.D. 476 (D.N.J. 1988)). Rather, the bad faith inquiry focuses on the moving party's "motives for not amending . . . earlier," and whether there is "extrinsic evidence"—aside from the delay itself—that indicates bad faith. *See Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

In arguing that Adams' motion to amend was made in bad faith, DMG Property Management points out that the proposed amendments "include facts that were within [Adams'] knowledge" years ago. (*See* ECF 194 at 7). While that is true, it is not *per se* enough to find bad faith. *See Zelma*, 2020 WL 5201341, at *2; (ECF 196-1 at 7). There must be some other evidence, aside from the delay itself, which suggests that Adams' decision to seek amendment at this point was tainted by bad faith. *See Adams*, 739 F.2d at 868.

And there is. Although Adams' briefing omits any mention of it, the PTAC would effectively remove the claims of plaintiff Julia Jones from this action. (*See* ECF 185-5 ¶¶ 15, 21, 24–25, 32, 97, 103–105, 113, 116, 145, 147, 153, 157; ECF 194 at 8). But a litigant may not use the amendment process to remove the claims of a co-plaintiff without her consent. That task may be accomplished only through a motion to sever under Federal Rule of Civil Procedure 21. *See, e.g., Twin City Fire Ins. Co. v. Ovation Fund Servs., LLC*, 18-CV-14944 (SRC), 2019 WL 1275060, at *2 (D.N.J. Mar. 20, 2019); *see also* Fed. R. Civ. P. 21 (permitting the Court to "sever any claim against a party."). And plaintiff Adams appears to know that. The same day he filed this motion, Adams also filed a motion to sever his claims from those of plaintiff Jones under Rule 21. (*See* ECF 186). Therefore, his attempt here to remove Jones' allegations and claims through the amendment process is improper and suggests a "belt and suspenders" approach to accomplishing her removal as a plaintiff *sub silentio* should his motion to sever be denied. What's more, the fact that Adams sought to do so in the midst of a falling out with Jones (*see* ECF 189), after she made damaging claims about him during her deposition (*see id.*; ECF 168 at 2), and without any mention of it in his briefing (*see* ECF 185-1; ECF 196-1), is indicative of bad faith.

Moreover, the Court regards plaintiff's attempt to include a plethora of revised factual allegations without mention of them in the moving or reply briefs as lacking in candor to the Court. (*See, e.g.,* ECF 185-5 ¶¶ 17, 19, 28–30, 47, 68–69, 71, 75, 83–84, 90–95, 102, 114). The omission smacks of an attempt to "slip in" revisions that plaintiff is well aware could only have been made with Court approval, much earlier in this action. Accordingly, the second Rule 15 factor also weighs against amendment.

### c. Undue Prejudice

Finally, the third factor under Rule 15—whether amendment would be unduly prejudicial to the non-moving parties—also weighs against allowing the proposed amendments.  In applying the undue prejudice factor, courts must consider the degree of hardship that amendment would impose on the non-movants, and whether amendment would impair their "ability to present [their] case."  *See Dente v. Saxon Mortg.*, 11-CV-6933 (AET), 2012 WL 1664127, at *2 (D.N.J. May 11, 2012); *Cureton*, 252 F.3d at 273.  More specifically, the undue prejudice inquiry focuses on the extent to which the proposed amendments would force the non-moving parties "to engage in burdensome new discovery and significant new trial preparation."  *Conrad v. Lopez De Lasalle*, 681 F.Supp.3d 371, 383 (D.N.J. 2023) (citing *Cureton*, 252 F.3d at 274–76) (internal quotation marks omitted).  A court's undue prejudice analysis also must consider whether amendment—and the additional discovery that would accompany it—would "significantly delay resolution of the dispute."  *See Formosa Plastics Corp., U.S.A. v. ACE Am. Ins. Co.*, 259 F.R.D. 95, 100 (D.N.J. 2009) (citing *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)).

After more than four years of litigation and two previous amended pleadings, plaintiff Adams seeks to add claims against four proposed defendants and extensively to revise his factual allegations.  (*See* ECF 185-5).  At the very least, granting the amendment would require the proposed new defendants to propound and answer written discovery, as well as to submit to and take depositions.  (*See* ECF 194 at 4–5).  Depositions that had already been completed would likely have to be reopened.  All of this would require the non-movants to invest substantially more time and resources into this matter and would further postpone the already significantly delayed final resolution of this case.  *See Conrad*, 681 F.Supp.3d at 383 (citing *Cureton*, 252 F.3d at 274–76); *Formosa Plastics Corp., U.S.A.,* 259 F.R.D. at 100 (citing *Long*, 393 F.3d at 400).  It would also

render meaningless the current, previously extended deadlines for completing discovery.  (*See* ECF 236 ¶¶ 1, 5).

Plaintiff Adams argues that amendment would not be prejudicial because the proposed defendants are "known to and associated with the original" defendants (ECF 185-1 at 8), and the parties have not completed much discovery yet anyway.  (*See* ECF 196-1 at 5).  But that only underscores the point.  Assuming past experience is predictive of future behavior, the parties' inability to complete basic fact discovery over the last *four* years all but confirms that adding four new defendants this late in the case would lead to new discovery disputes and "significantly delay resolution of the" case.  *Formosa Plastics Corp.*, 259 F.R.D. at 100 (citing *Long*, 393 F.3d at 400); *Conrad*, 681 F.Supp.3d at 383 (citing *Cureton*, 252 F.3d at 274–76).  Thus, the third Rule 15 factor also weighs against allowing the proposed amendments.

### III.    CONCLUSION

In sum, plaintiff Adams' motion to amend is subject to and fails the "good cause" standard embodied in Federal Rule of Civil Procedure 16.  And even if the motion were decided solely under Rule 15's standards, it fails to satisfy those requirements as well.  Accordingly, plaintiff Adams' motion to amend is hereby **DENIED**.  The Clerk of the Court is directed to terminate the motion at ECF 185.

**It is SO ORDERED**.

Dated:  October 20, 2025

 *s/ Leda Dunn Wettre*
Hon. Leda Dunn Wettre
United States Magistrate Judge