## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**Chambers of**
**Leda Dunn Wettre**
**United States Magistrate Judge**

**Martin Luther King Federal**
**Building**
**& U.S. Courthouse**
**50 Walnut Street**
**Newark, NJ 07101**
**(973) 645-3574**

January 29, 2026

To:   All counsel of record

## LETTER OPINION

Re:   *Adams et al. v. DMG Park, LLC, et al.*
      <u>Civil Action No. 21-17442 (MCA) (LDW)</u>

Dear Counsel:

Before the Court is plaintiff Gerald Adams' response (ECF 247) to the Court's Order requiring him to show cause why he should not be sanctioned for violating several Court Orders. (ECF 244). Prompted by submissions from defendants DMG Park, LLC and DMG Investments, LLC (collectively, "Developer Defendants"), the Court ordered Adams to set forth why he should not be sanctioned for: (1) failing to provide information ordered by the Court necessary to determine whether he was entitled to a Protective Order with respect to his deposition; and (2) violating the Court's Order to submit discovery disputes solely by joint letter. (*See* ECF 239, 243, 244).

For the reasons set forth below, the Court determines sanctions are justified. The Court therefore stays this action as a discovery sanction under Federal Rule of Civil Procedure 37 until Adams complies with the Court's Order concerning his deposition. The Court exempts from the stay only Developer Defendants' pursuit of responses to the subpoena they served on Adams' former employer, Adidas America, Inc. ("Adidas").

## BACKGROUND

Throughout this action, plaintiff Adams has impeded the progress of discovery. A history of Adams' litigation conduct is outlined more fully in the Court's Opinion and Order denying his motion to amend, which the Court incorporates here by reference. (*See* ECF 245). The present obstacles created by Adams to the completion of fact discovery are his failure to appear for deposition or show grounds for a Protective Order, and his repeated disregard of the Court's Order to submit discovery disputes by joint letter to ensure that the meet-and-confer prerequisite of Local Civil Rule 37.1 had been satisfied. (*See* ECF 244 (referencing ECF 239 and 243)). The Court

briefly reviews the factual background as to each offense.

## I.    Plaintiff Adams' Deposition

In contravention of a notice of deposition and Court Order, Adams has not yet submitted to deposition.   Developer Defendants noticed his in-person deposition to take place in New Jersey on August 27, 2025.   (ECF 222-4 at 3–4).   In the days leading up to the deposition, however, Adams contended that special conditions would be required for him to appear (*see* ECF 222-5), forcing Developer Defendants to seek the Court's intervention.   (ECF 222).   Adams sought, *inter alia*, to have his deposition conducted "via Zoom," although it had been noticed to be taken in person.   (*See* ECF 223 at 2).   The Court, after reviewing the parties' letters and finding no basis to impose the conditions sought by Adams, ordered on August 22, 2025 that the in-person deposition go forward as noticed by Developer Defendants.   (ECF 224).

On August 26, 2025, the day before the scheduled deposition, Adams sought a Protective Order for his deposition to proceed remotely.   (ECF 226).   He claimed that "travel for deposition attendance [from his new residence in Texas] would pose significant risks" to his health, "including potential cardiac events, stroke recurrence, or other life-threatening complications." (*Id.* at 1).   In support of his request, Adams included an "excuse slip" from a Dr. John Yu, which asked that Adams be "excuse[d]" from "any further flying or travel until further notice."   (*Id.* at 6).

The Court then ordered all counsel to appear at a September 10, 2025 case management conference to address Adams' deposition and other discovery issues.   (*See* ECF 228).   During that conference, the Court explained that the excuse slip from Dr. Yu was "not sufficient . . . to ascertain a host of questions germane to the requested protective order."   (ECF 256 at 53:14–16). The Court identified several specific questions Adams needed to address with supporting medical evidence, including: whether he could travel to New Jersey for deposition by means other than flight, given that Dr. Yu's note specifically precluded air travel; whether he could be deposed in-person in Texas without threatening his health; and when an update as to his cardiac condition would be provided, assuming the condition was temporary.   (*See id.* at 53:16–54:3).   The Court ordered Adams to provide information in response to these questions on or before September 25, 2025.   (ECF 236 ¶ 11).

Adams did not provide the information ordered by the Court.   Instead, on September 30, 2025, his counsel submitted another "excuse slip" from Dr. Yu stating that Adams was restricted from flying for sixty days, but providing none of the additional information ordered by the Court. (ECF 240 at 3).   In his show-cause submission, Adams simply reiterates that he suffers from unspecified "cardiovascular and cerebrovascular conditions that have materially affected his ability to travel."   (ECF 247 at 9).   He thus has not provided the information the Court ordered for the purpose of ascertaining when and under what conditions Adams can be deposed consistent with his health conditions.

## II.    The Joint Letter Requirement

During the course of discovery, Adams' counsel has submitted numerous discovery dispute

letters in violation of Local Civil Rule 37.1's meet-and-confer requirement.   *See* L. Civ. R. 37.1(a)(1) ("Counsel shall confer to resolve any discovery dispute.   Any such dispute not resolved shall be presented by telephone conference call or letter to the Magistrate Judge."). Adams' letters failed to reflect that counsel had even met and conferred, much less reached impasse, before his counsel wrote the Court seeking relief.   (*See, e.g.,* ECF 203, 205).

Having spent an inordinate amount of time addressing such improper letters during the course of discovery, the Court issued an Order on August 6, 2025 requiring all future discovery letters from Adams to be submitted jointly.   (ECF 207).   Specifically, the Court ordered as follows:

> Due to plaintiff Adams' counsel's frequent noncompliance with the Court Rules, this Court has been unduly burdened by this action for quite some time.   Going forward, the Court will not consider any discovery dispute from plaintiff Adams that is not presented by joint letter of counsel and that is in full and complete compliance with Local Civil Rule 37.1.   Deviations from this Rule without prior Court leave may result in the imposition of sanctions.   The Court will not consider any of the matters contained in any of the aforementioned letters filed by any party unless and until they are presented as prescribed.

(*Id.*).

Adams' counsel submitted the first of multiple letters in violation of that Order within three weeks of its issuance.   Several were submitted as unilateral letters, and did not address why they were not submitted jointly.   (ECF 225, 231).   One is labeled a "joint letter" but is not; it merely attaches an email between counsel and designates the email as the adversary's position.   (ECF 241).   And most disturbingly, Developer Defendants contend that one letter Adams' counsel represented to be "joint" contains a position attributed to them which they did not draft and had never seen prior to its submission to the Court.   (ECF 251 (referencing ECF 248)).   Another defendant levies similar accusations against Adams.   (ECF 250 (referencing ECF 249)).

Adams has also misused the joint letter requirement to block discovery he resists.   On September 3, 2025, Adams improperly submitted a non-joint letter objecting to a subpoena defendants served on his former employer, Adidas.   (ECF 231).   In response, the Court instructed the parties "to submit a joint letter regarding the discovery dispute" over the Adidas subpoena, and to advise Adidas "not [to] respond to the subpoena until the Court" ruled on the dispute.   (ECF 232).   When Developer Defendants contacted Adams for his input on the joint letter, however, Adams refused to participate, claiming that the subpoena dispute was not before the Court.   (See ECF 239-4).   It was only after Developer Defendants raised Adams' refusal with the Court (ECF 239) that he purported to seek their position for a joint letter.   (See ECF 241 at 7).   No joint letter was ever submitted, however.

When the Court asked Adams' counsel why he had submitted non-joint letters in violation of the August 6, 2025 Order, counsel was utterly unable to provide any satisfactory response.   His only explanation was that Adams' "litigation team" had violated the Court's joint letter requirement (repeatedly) "out of haste."   (ECF 255, Transcript of November 4, 2025 Telephone

Conference at 6:7–20).

The Court now considers the appropriate remedy for the conduct described above.

## DISCUSSION

Before the Court is the unpleasant question of whether to impose sanctions on Adams for his discovery misconduct.   While sanctions are always a tool of last resort for the Court, they become necessary when the Court's lesser tools of ensuring compliance with Rules and Orders—reminders, warnings and "last chances"—have been exhausted without any improvement in a litigant's conduct.   Such is unfortunately the case here.   Adams' litigation conduct and that of his counsel has been vexatious and defiant throughout discovery.   Respect for the Court's authority would be diminished if such conduct were permitted to continue without consequence.

Federal Rule of Civil Procedure 37 provides a panoply of remedies for the conduct at bar. It "was designed to protect courts and opposing parties from delaying or harassing tactics during the discovery process."   *Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198, 208 (1999).   The Rule provides a list of potential sanctions for failure to comply with discovery orders or appear for deposition.   *See* Fed. R. Civ. P. 37(b)(2)(A); Fed. R. Civ. P. 37(d)(1)(A)(i).   These range from "dismissing the action or proceeding in whole or in part" to "staying further proceedings until the order is obeyed."   Fed. R. Civ. P. 37(b)(2)(A)(iv)–(v); *see also* Fed. R. Civ. P. 37(d)(3). Whether and what sanction to impose "is generally entrusted to the discretion of the district court," so long as the chosen sanction is "just" and "specifically related to the particular claim . . . at issue" in the pertinent discovery order.   *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018) (internal emphases, quotations, and citations omitted).   In exercising that discretion, courts in this Circuit have prevented claims from moving forward—including through dismissal—when a plaintiff refuses to submit to deposition.   *See, e.g.*, *Dover v. Diguglielmo*, 181 F. App'x 234, 237 (3d Cir. 2006) (affirming dismissal based on plaintiff's refusal to answer questions during deposition); *Naik v. Bos. Consulting Grp.*, 14-CV-3097 (LDW), 2017 WL 424902, at *6 (D.N.J. Jan. 12) (recommending dismissal with prejudice for refusal to comply with Court orders, including to submit to duly noticed deposition), *report and recommendation adopted by* 2017 WL 401944 (D.N.J. Jan. 30), *appeal dismissed*, 2017 WL 7796288 (3d Cir. Sept. 21, 2017).

In addition to their authority under Rule 37, district courts have the "inherent power to police litigant misconduct and impose sanctions on those who abuse the judicial process."   *Reilly v. Home Depot U.S.A., Inc.*, 670 F.Supp.3d 126, 140 (D.N.J. 2023) (internal quotations and citations omitted).   "'[A] district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified.'"   *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 100 (D.N.J. 2006) (quoting *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994)).   Thus, a court exercising its inherent power to sanction must first "explain why the conduct in question warrants a sanction," and then "explain why it has chosen any specific sanction from the range of identified alternatives."   *Nikolaeva v. Sparta Twp. Bd. Of Educ.*, 21-CV-19977 (JSA), 2025 WL 3093833, at *4 (D.N.J. Sept. 30), *report and recommendation adopted by* 2025 WL 3090195 (D.N.J. Nov. 5, 2025).

4

## I.    Plaintiff Adams' Refusal to Submit to In-Person Deposition

The Court first considers whether to impose sanctions for Adams' conduct concerning his deposition.    For this case to proceed past the prolonged fact discovery stage, it is imperative that Adams give his deposition.    He has made wide-ranging factual allegations that require exploration by defendants at deposition.    (*See, e.g.*, Second Amended Complaint, ECF 63 ¶ 22 (claiming that defendants' "harassment and discrimination against the Plaintiffs includes but is not limited to denying Plaintiffs building services, failing to respond to their complaints, failing to provide Plaintiffs with requested information, making false allegations against the Plaintiffs" and more)).    The Court has previously opined, and here reiterates, that such a deposition should take place in-person to be most effective.    That view finds support in the Federal Rules of Civil Procedure, which provide that depositions be taken in-person absent stipulation or Court order to the contrary.    *See* Fed. R. Civ. P. 30(b)(4).    And the presumptive rule as to deposition locale is that Adams' deposition be taken in New Jersey, where he filed suit.    *See, e.g.*, *Song v. Zhang*, 21-CV-17918 (RLS), 2025 WL 566193, at *3 (D.N.J. Feb. 20, 2025) (citing *S. Seas Catamaran, Inc. v. Motor Vessel Leeway*, 120 F.R.D. 17, 21 (D.N.J. 1988)).    In order to rebut these presumptions, Adams must make "a showing of unreasonable hardship or the presence of exceptional circumstances," or otherwise "demonstrate good cause" sufficient to justify the "issuance of a protective order" under Federal Rule of Civil Procedure 26.    *Diaz v. Demane*, 05-CV-2280 (CCC), 2008 WL 11383767, at *2 (D.N.J. Feb. 28, 2008) (internal quotations and citations omitted).

Adams claims that a cardiac condition prevented his in-person participation in the August 27, 2025 deposition (*see* ECF 226) and continues to prevent him from sitting for an in-person deposition in New Jersey.    (*See* ECF 247 at 9).    But, in disregard of the Court's Orders, he has not provided the substantiation and details of how his condition impacts his ability to be deposed. Adams has not indicated whether he could travel to New Jersey by means other than flight.    (*See* ECF 256 at 53:16–20).    Nor has he answered the Court's question whether he could sit for an in-person deposition so long as he did not have to travel.    (*See id.* at 53:21–25).    The last update from Dr. Yu—the September 30, 2025 excuse slip—merely states that Adams could not fly for sixty days from that date.    (*See* ECF 240).    But those sixty days have elapsed without Adams having provided any additional information from Dr. Yu or any other medical expert in response to the Court's specific inquiries.    Adams' failure to provide basic information regarding the effect of his purported condition on his ability to be deposed renders him unable, on the current record, to defeat the presumption that he be deposed in-person, in New Jersey.    *See Diaz*, 2008 WL 11383767, at *2.    Nor can the Court fashion any form of Protective Order without the required information as to how his cardiac condition affects his ability to sit for deposition.

Adams' intransigence with respect to his deposition is yet another unfortunate example of his apparent view that discovery is a one-way street, in which he takes but does not provide discovery.    Indeed, during the period he was noncompliant with the Court's Order to provide further medical information, Adams proactively sought to compel further discovery from defendants.    (ECF 248, 249).    The Court finds it amply warranted, then, to preclude Adams from advancing his interests in this action until he testifies at deposition.    He should not be permitted to prosecute his claims while refusing to allow examination of the extensive allegations underlying those claims.    The Court will accordingly stay this action as a Rule 37 sanction until Adams gives

his deposition in New Jersey, as ordered, or seeks with supporting evidence a Protective Order setting appropriate conditions for deposition.    Such a sanction is squarely within the Court's authority and is amply justified.    *See* Fed. R. Civ. P. 37(b)(2)(A)(iv); *Dover*, 181 F. App'x at 237; *Naik*, 2017 WL 424902, at *6; *Lee v. Sunrise Senior Living, Inc.*, 09-CV-5720 (AET), 2011 WL 13366288, at *3 (D.N.J. June 15, 2011).[1]

While the Court is cognizant that such a stay will temporarily prevent Adams' co-plaintiff Julia Jones from advancing her claims, and defendants from pursuing discovery, that result is unavoidable given the intertwined nature of the allegations and claims.    As this Court has explained, "Adams' and Jones' legal claims are identical, as are the majority of the factual allegations on which those claims are based."    (Letter Order Denying Motion to Sever, ECF 246 at 2; *see also* ECF 63 ¶¶ 134–157 (asserting all five claims on behalf of both plaintiffs)). Accordingly, Adams' testimony is just as crucial to the prosecution and exploration of Jones' claims as his own.    In short, it is not just or practical for this case to proceed as to any party until Adams complies with this Court's Orders and makes himself available for deposition.

## II.    Plaintiff Adams' Submission of Unilateral Discovery Dispute Letters

The Court next considers whether to sanction Adams or his counsel for their consistent failure to submit discovery disputes via joint letter, as required by the Local Civil Rules and this Court's Orders.    The Court instructed Adams in no uncertain terms in its August 6, 2025 Order that any further discovery dispute presented to the Court be submitted jointly.    (*See* ECF 207). It reiterated that instruction in its subsequent Order requiring the parties to present their dispute as to the Adidas subpoena via joint letter.    (*See* ECF 232).    Nevertheless, Adams has violated those Orders repeatedly.    (*See* ECF 225, 231, 241, 248).    Worse, Adams' counsel has dubbed at least two unilateral submissions "joint" letters and claimed to have conferred with defense counsel prior to filing (ECF 248, 249), even though defense counsel contend they did not contribute to and were wholly unaware of the submissions.    (*See* ECF 250, 251).    Adams' counsel has provided no adequate excuse for these violations of the Court's Order requiring him to submit discovery disputes by joint letter.    (*See* ECF 255 at 5:7–23, 6:7–20).

The Court will not impose monetary sanctions on Adams or his counsel at this time, despite their conduct having cost defendants unnecessary time and money responding to unpermitted applications.    The Court will, however, disregard Adams' unilateral submissions because they violate its clear Orders to present discovery disputes jointly.    *Cf.* Fed. R. Civ. P. 37(b)(2)(A) (empowering courts to sanction parties for failing to obey discovery orders); *Clientron Corp.*, 894 F.3d at 580 (noting that Rule 37 sanctions left to court's discretion).    The Court will therefore disregard Adams' applications at ECF 231, 241, 248, and 249.[2]

For all such future violations, however, the Court intends to issue an Order to Show Cause

---

[1]    Indeed, the cited cases are all examples of a plaintiff's claims being *dismissed* due to their failure to submit to deposition, a much harsher sanction than the Court imposes here.

[2]    The Court has already addressed the dispute raised in the letter at ECF 225 in its Order memorializing the September 10, 2025 case management conference.    (*See* ECF 236).

why plaintiff and/or his counsel should not be sanctioned.    Further, the Court intends to address, after the stay is lifted, defendants' accusations that Adams and his counsel fabricated their positions in submissions to the Court.    (*See* ECF 250, 251).    Allegations of such serious misconduct cannot and will not be ignored.

### III.    Adidas Subpoena

Although the Court will stay this action in all other respects, it will allow Developer Defendants to proceed in seeking responses to the subpoena they served on Adidas.    As set forth above, Adams failed to avail himself of the opportunity to present his objections by joint letter while the Court stayed Adidas' response to the subpoena.    (*See* ECF 239-4).    Instead, he apparently sought to use the temporary stay of Adidas' time to respond to the subpoena—time meant to allow for the adjudication of Adams' objections—as a means to table Developer Defendants' pursuit of the subpoena indefinitely by preventing the dispute from being presented to the Court.    (*See id.*).

Given this history, the Court finds it appropriate to lift its stay of the Adidas subpoena and for this discrete issue to be litigated while the case is otherwise stayed.    If Adidas or either plaintiff seeks to oppose the subpoena, they may file formal motions to quash on or before **February 13, 2026**.    Developer Defendants shall inform Adidas that it has until February 23, 2026 to respond to the subpoena, subject to any intervening motion to quash.    **Motions to quash filed after February 13, 2026 will not be considered.**

### CONCLUSION

For the reasons set forth above, this action will be stayed, with the exception of the Adidas subpoena, until plaintiff Adams complies with the Court's Orders requiring him to either sit for an in-person deposition in New Jersey, or submit competent proofs as to why he cannot do so and under what conditions he *can* be deposed.    While Developer Defendants' requests to seek sanctions for misrepresentation and spoilation (ECF 251, 252) are currently stayed, the Court will address any aspects of those requests not addressed in this Opinion once the stay is lifted.    For now, the Court notes that those submissions should have been filed as pre-motion leave letters, not as formal motions, and will direct the Clerk to terminate the motions at ECF 251 and ECF 252. An Order consistent with the foregoing will be separately entered by the Court.

*s/ Leda Dunn Wettre*
Hon. Leda Dunn Wettre
United States Magistrate Judge

Orig:    Clerk
cc:       Counsel of Record